UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN AND PATRIZIA CHARPING, ) ) Plaintiffs, ) ) v. ) ) SCOTT LOWERY LAW OFFICE, P.C. AND ) CACH, LLC, ) ) Defendants. ) | |

COMPLAINT
JURY TRIAL DEMANDED

Plaintiffs, through counsel, hereby allege as follows:

THE PARTIES

1. Plaintiffs **John and Patrizia Charping** are North Carolina residents who reside at 4145 Guilford Court, Concord NC 28027, Cabarrus County.

2. Defendant **Scott Lowery Law Office, P.C. ("Lowery")** is a business entity which may be served with process at its office at 4500 Cherry Creek Drive South, Suite 700, Denver CO 80246, attn: Scott Lowery.

3. Defendant **CACH, LLC ("CACH")** is a business entity which may be served with process at its office at 4500 Cherry Creek Drive South, Suite 700, Denver CO 80246, attn: Officer, Director or Manager.

4. On information and belief, Defendants actually collect debts due another.

JURISDICTION

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1367. This

1

Court also has supplemental jurisdiction over any state law claims because they arise from a common nucleus of operative facts.

6. Venue is proper in this District because the acts and transactions occurred here, Plaintiffs reside here, and/or the Defendants transact business here.

7. This case is brought within one year of the violation in compliance with the statute of limitations found in 15 U.S.C. § 1692k(d), the four year statute of limitations found at N.C. Gen. Stat. § 75-16.2, and/or the three year statute of limitations found at N.C. Gen. Stat. § 71-52(2).

## FACTUAL ALLEGATIONS

8. Defendants sent a collection letter to Plaintiff Mr. Charping dated September 13, 2005 asserting a debt of $18,551.25.

9. This letter was the Defendants' first contact with the Plaintiffs.

10. The September 13, 2005 letter states that the creditor is CACH.

11. By letter dated September 26, 2005, Mr. Charping disputed the debt and requested validation of the debt.

12. CACH never provided such validation.

13. However, its debt collection efforts continued.

14. Following the September 2005 letter, one or both of Defendants made a series of phone calls to the Plaintiff Mr. Charping, at his spouse Plaintiff Mrs. Charping's cellphone number.

15. These phone calls began in or about September 2005.

16. Plaintiffs received telephone calls through at least January 27, 2006.

17. These phone calls placed after a debt validation letter was sent in, violated the law, and fall within the statute of limitations for Plaintiffs' claims under the North Carolina state debt collection statutes.

18. The underlying debt purportedly is based upon what was originally a Wachovia credit card issued to Mr. Charping prior to 1990.

19. Plaintiff Mr. Charping has no recollection of receiving or agreeing to an arbitration agreement related to the Wachovia credit card account.

20. Upon information and belief, some time after the initial issuance of the credit card, the account was assigned to MBNA America Bank, N.A. ("MBNA").

21. CACH and Lowery apparently claim that MBNA sent Mr. Charping a copy of the credit card agreement with an arbitration clause which is attached to the arbitration claim.

22. However, Mr. Charping did not use the credit card after MBNA was assigned it. Therefore he never agreed to the arbitration provision. Because Mr. Charping never used the card after MBNA took over, he never agreed contractually to an arbitration clause.

23. According to Lowery and CACH, the last payment made by Mr. Charping on the purported debt occurred on February 28, 2004. In fact, his actual last payment was in 2003.

24. Mr. Charping's credit report previously reflected a date of last activity of July 2003, and this date was reported as recently as December 2005.

25. However, the credit report was later mysteriously changed to reflect a purported date of last activity of February 2004.

26. When Mr. Charping and his wife learned of this new date of last activity, they contacted their bank to investigate. They learned that someone had documented a purported check dated February 28, 2004, not signed by Mr. Charping. Mr. Charping never made, sent, allowed or authorized such a check or payment. This purported check is forged or fraudulent, and is ineffective to toll the statute of limitations.

27. Mr. Charping lives in North Carolina. The MBNA credit card agreement purports to state that Delaware law applies. Under either state's law, the limitations period is three years. *See* N.C. Gen. Stat. § 1-52(1) (three-year statute of limitations); *Dukes Lumber Co. v. Ewing*, 2006 WL 1277873 (Del. Com. Pl. 2006) (same, citing 10 Del. C. § 8106).

28. On or about October 25, 2005, Lowery and CACH filed an arbitration claim against Mr. Charping in the National Arbitration Forum ("NAF").

29. However, the NAF claim was never served by Lowery or CACH prior to July 2006 when the three year statute of limitations expired.

30. NAF Code of Procedure Rule 10(A), Time Limitations, says: "No Claim may be commenced after the passage of time which would preclude a Claim regarding the same or similar subject matter being commenced in court."

31. NAF Code of Procedure Rule 10(B), Time Limitations, says: "An arbitration shall commence on the date the Respondent is served with the Initial Claim Documents or the date a Response is filed with the Forum, whichever is earlier."

32. Under NAF Rule 10, the NAF arbitration is not deemed to have commenced until the date that Mr. Charping was served.

4

33. On March 31, 2007, Defendants purportedly hand-served the NAF claim on Mr. Charping.

34. Because the NAF Demand was not served by July 2006 (three years after the date of last payment in July 2003), the claim became time-barred on that date.

35. Further, even if CACH were somehow to prove that February 28, 2004 was the date of last payment, the claim would still be time-barred. This is because the NAF claim was never served by Lowery or CACH until purportedly on March 31, 2007, more than three years later.

36. The undersigned counsel wrote to Defendant Lowery informing Defendant that the claim had become time-barred.

37. Nonetheless, Defendants still sought to serve the NAF Demand on the Charpings.

38. On March 31, 2007, Defendants purportedly hand-served the NAF Demand on Mr. Charping. Specifically, a process server came to the Charpings' house and basically threw the NAF Demand package at Mrs. Charping, summarily telling her that she had been served. She was frightened and humiliated by this incident.

39. This act was an illegal debt collecting activity that occurred after the underlying purported debt became time-barred and after Defendants were put on actual notice that the claim was time-barred.

40. The undersigned recently received a notice from the NAF dated April 18, 2007 that CACH has sought to commence a time-barred arbitration. Plaintiffs will object to and oppose this arbitration.

41. The Charpings have suffered emotional distress as a result of this series of events, particularly Mrs. Charping. The above series of events was especially traumatic to Mrs. Charping since she had also been dealing with a drawn-out, difficult medical situation during this time.

42. Specifically, in January of 2006 she was diagnosed with a large tumor behind her left eye. This tumor was pushing Mrs. Charping's eye out of its socket and after a serious of medical tests it was determined that she would need surgery. The first surgery was in February 2006 and left her with massive headaches and double vision. After more medical tests it was determined a series of surgeries would have to be conducted.

43. Mrs. Charping had a series of surgeries from February through December 2006 including two that were only a month apart. She was unable to work, drive or even conduct many day to day activities due to double vision and impairment. She suffered constant exhaustion and headaches over a period of months. The actions by Defendants during this time period caused her great emotional distress while she was also having to endure her medical situation.

44. All actions taken by Defendants' employees, agents and representatives occurred in the normal course and scope of their employment and with the knowledge, approval and ratification of the Defendants.

45. Upon information and belief, as of September 13, 2005, Defendant Lowery had an ownership interest and/or other close business relationship in or with CACH.

46. Upon information and belief, as of September 13, 2005, Defendant Lowery had an ownership interest and/or other business relationship in or with CACH such that Defendant had a conflict of interest in purporting to legally represent CACH.

### COUNT ONE -- VIOLATION OF THE FDCPA

47. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

48. This claim is brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

49. Plaintiffs are each is a "consumer" and Defendants are each a "debt collector" as that term is defined by 15 U.S.C. § 1692a.

50. The purported debt at issue is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

51. As alleged above, upon receipt of Defendants' initial letter, the Plaintiff Mr. Charping wrote back requesting validation of the debt. Defendants never sent validation under 15 U.S.C. § 1692g, which meant that Defendants were barred from further collection activity. By engaging in further collection activity, including within the last year, Defendants violated the FDCPA, 15 U.S.C. § 1692g(b).

52. By hiring a process server to go onto the Plaintiffs' property and throw an NAF Demand package at Mrs. Charping causing her great anxiety and distress, the Defendants once again violated the FDCPA by seeking to collect on a time-barred debt. 15 U.S.C. § 1692e which has been construed to preclude a debt collector from suing or threatening to sue on a time-barred debt. *See Wallace v. Capital One Bank,* 168 F. Supp. 2d 526, 527 (D. Md. 2001); *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480,

7

1488-90 (M.D. Ala. 1987); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 393 (D. Del. 1991); *Dunaway v. JBC & Assoc., Inc.*, 2005 WL 1529574, *4 (E.D. Mich. June 20, 2005).

53. Defendants also falsely represented the character, extent or amount of the debt in the NAF claim including without limitation by reciting or causing to be recited a false date of last activity of February 2004.

54. Defendant breached the FDCPA by harassing, oppressing, and abusing Plaintiffs, *see* 15 U.S.C. § 1692d; used false, deceptive, or misleading representations to Plaintiffs in connection with debt collection, *see* 15 U.S.C. § 1692e; and/or used unfair or unconscionable means to attempt to collect the alleged debt, *see* 15 U.S.C. § 1692f.

55. As a result of Defendants' violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**COUNT TWO**
**VIOLATION OF THE NORTH CAROLINA DEBT COLLECTION STATUTES**
**AND N.C. GEN. STAT. § 75-1.1 *ET SEQ.***

56. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

57. Upon information and belief, during the pertinent times one or both of Defendants were not licensed debt collectors in North Carolina.

58. Upon information and belief, as of September 13, 2005, Defendant Lowery had an ownership interest and/or other business relationship with Defendant CACH, and/or during the pertinent times operated a collection agency under the

management of a layman, such that Defendant Lowery falls within the ambit of N.C. Gen. Stat. §§ 58-70-15(c) and 58-70-90(3). When Defendant Lowery sent its September 13, 2005 letter, it was effectively operating a collection agency under the management of a layman. Further, as noted on the letter itself, at the time the letter was sent no actual attorney had even reviewed the matter.

59. Alternatively, each Defendant is a "debt collector" within the ambit of N.C. Gen. Stat. § 75-50(3) as it defines the term.

60. Defendants through their above-alleged conduct as alleged above breached the North Carolina Debt Collection Statutes as follows:

   a. by engaging in fraudulent, deceptive or misleading representations under N.C. Gen. Stat. §§ 75-54 and 58-70-110;

   b. by engaging in unfair threats and coercion in violation of N.C. Gen. Stat. §§ 75-51 and 58-70-95; harassing, oppressing, and abusing Plaintiff in violation of N.C. Gen. Stat. §§ 75-52 and § 58-75-100;

   c. by using unfair or unconscionable means to attempt to collect the alleged debt under N.C. Gen. Stat. §§ 75-55 and 58-70-115; and

   d. by otherwise violating the North Carolina debt collection statutes found at N.C. Gen. Stat. §§ 58-70-1 to 58-70-130, and/or §§ 75-50 to 75-56.

61. Accordingly the Plaintiffs are each entitled to recovery of a civil penalty up to $2000 and reasonable attorney's fees under N.C. Gen. Stat. §§ 75-56, 58-70-130, 75-16 and 75-16.1.

**COUNT THREE**
**VIOLATION OF N.C. GEN. STAT. § 75-1.1 *ET SEQ.***

62. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

63. The North Carolina Unfair and Deceptive Trade Practices Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive

9

acts or practices in or affecting commerce are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

64. Defendants' practices alleged herein constitute unfair and deceptive acts or practices in or affecting commerce pursuant to N.C. Gen. Stat. § 75-1.1; the practices are illegal, unfair or deceptive acts or practices in the conduct of trade or commerce and are inherently deceptive; the practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.

65. The instant facts constitute consumer transactions within the meaning of trade or commerce.

66. Defendants' practices proximately caused harm to Plaintiffs, caused harm to North Carolina consumers, and were deceptive in their effect upon an average consumer.

67. Accordingly Plaintiffs are each is entitled to recovery of a civil penalty up to $2000 and reasonable attorney's fees under N.C. Gen. Stat. §§ 75-56, 58-70-130, 75-16 and 75-16.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

1. for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendants;

2. for an award of statutory damages of $1,000.00 per Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Defendants;

3. for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendants;

4. for an award of statutory damages of $2,000.00 per Plaintiff pursuant to N.C. Gen. Stat. § 75-56 and N.C. Gen. Stat. § 75-1.1 *et seq.*, as well as any attorney's fees available thereunder;

5. for an award of the costs of suit, any discretionary costs as may be allowable by law, pre-judgment and post-judgment interest; and

6. award such other and further relief as the Court deems just and proper under the circumstances.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES.**

Respectfully submitted this the 27th day of April, 2007.

<pre>                                        s/ John S. Hughes
                                        John Hughes, Esq.
                                        N.C. State Bar No. 22126
                                        Wallace & Graham, P.A.
                                        525 N. Main Street
                                        Salisbury, NC  28144
                                        Phone: 704-633-5244
                                        Fax:  704-633-9434
                                        jhughes@wallacegraham.com</pre>